[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12162
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cr-60294-RNS-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWAYNE T. JACKSON,
a.k.a. Wondwane T. Jackson,
a.k.a. Edward Rogers,
CARLOS JENKINS JR.,
QUINTON JOHNSON,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 31, 2016)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Dwayne Jackson, Carlos Jenkins, and Quinton Johnson appeal their convictions for their roles in the robbery of a SunTrust Bank in Coral Springs, Florida, 18 U.S.C. §§ 2, 2113(a), 924(c)(1)(A)(ii), and Jackson and Jenkins appeal their respective sentences of 71 and 360 months of imprisonment. Jackson, Jenkins, and Johnson challenge the sufficiency of the evidence, and Jackson and Jenkins contend the district court erred by evaluating their motions for a new trial using the standard for a motion for a judgment of acquittal. Jenkins also argues that he was entitled to a new trial based on the prosecutor's improper closing argument and that his sentence is procedurally and substantively unreasonable. Jackson also challenges his classification as a career offender and, based on his argument in his reply brief that the intervening decision of the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015), invalidated the residual clause of the Sentencing Guidelines, we directed the parties to file supplemental briefs addressing the issue, *see United States v. Durham*, 795 F.3d 1329, 1331 (11th Cir. 2015). After careful consideration, we affirm.

## I. BACKGROUND

On the morning of November 14, 2012, two African-American men wearing hats, sunglasses, and bandannas entered the SunTrust Bank and announced "it is a

robbery." One robber leapt across the customer counter carrying two 55 gallon garbage bags, threw one bag on the ground and stuffed the second bag with cash in the bank tellers' drawers. Meanwhile, the second robber, who was wielding a gun and a tire iron and wearing a black sweatshirt, instructed bank customers to lie on the ground. Surveillance video recordings showed that the gunman was also wearing a dark knit cap over a baseball hat, two-tone gloves, something blue under his jeans, and a belt that hung almost to his knees.

Based on information provided by a customer who the gunman forced to relinquish his bag of currency, Juan Landazabal, and an employee of the United Postal Service, Steven Carrier, officers determined that the robbers left the bank in a Nissan Sentra that was navy blue and, after driving a few blocks, switched to a Dodge Charger. Carrier, who was parked in a plaza near the bank, called 911 and reported that the Sentra sped into the plaza and pulled in a parking spot, after which two men, one of whom was wearing a red shirt, bounded out of the Sentra, leaving its doors ajar, and into the Charger, which sped away. While Carrier was talking to the dispatcher, officers arrived at the plaza and examined the Sentra, which had been hotwired and left with its motor running. Officers photographed a semi-automatic pistol and gloves lying in the front passenger seat of the Sentra.

Officer William Reid of the Coral Springs Police Department located the Dodge Charger on a nearby highway and embarked on a high-speed chase that

3

ended when the Charger struck another vehicle, crossed a grass median, and stopped in the opposite lane of traffic. An aerial video recording of the chase showed three men scatter from the Charger. The video footage depicted a man wearing a light-colored shirt scramble out of the driver's door, after which a second man wearing a red shirt staggered out of the rear passenger door and a third man wearing a dark shirt climbed out the rear driver's side door. Another part of the recording showed Officer Reid handcuff the man in the dark shirt, who he identified as Gregory Richardson, and Detective Matthew Aiken apprehend the man in the red shirt, Jackson, as he attempted to climb a barbed-wire fence. Although the man wearing the light-colored shirt scaled the fence, within a few minutes, Detective Brian Koenig captured the man, identified him as Jenkins, and seized a cellular telephone from his pocket.

Laura Schwartzenberger, an agent of the Federal Bureau of Investigation, recovered from the back seat of the Charger several items connected to the bank robbery, including sunglasses, a tire iron, two dark-colored shirts, a pair of two-toned gloves, a blue and white bandanna, a dark knit cap, a black baseball cap, and white rubber gloves. Inside the glove compartment, Schwartzenberger discovered documents bearing the name Quinton Johnson. The agent noticed that the Charger, unlike the Sentra, did not have any damage to its door, ignition, or steering column.

Johnson arrived at the scene of the crash and confirmed that he owned the Charger. Johnson denied having any affiliation with Richardson and allowed a federal agent to search his cellular telephone. Later, Johnson waived his constitutional rights and acknowledged that he knew Richardson.

Agents collected other evidence that connected Jenkins and Johnson to the bank robbery. Agents obtained cellular telephone records showing that Jenkins and Johnson exchanged about 240 telephone calls during the two months preceding the robbery and one call moments after its completion, after which Johnson called 911 six times. A fingerprint analyst discovered Jenkins's fingerprint on a pair of sunglasses recovered from the Charger and Johnson's and Richardson's fingerprints on a garbage bag used during the robbery.

A grand jury returned a multi-count indictment against all the participants in the robbery. Richardson pleaded guilty to the robbery of the SunTrust Bank while using a firearm and to several other bank robberies. 18 U.S.C. §§ 2, 2113(a), 924(c)(1)(A)(ii). Later, the grand jury returned a superseding indictment that charged Johnson, Jenkins, and Jackson for bank robbery, *id.* §§ 2, 2113(a), and that also charged Jackson for using, carrying, and brandishing a firearm during the robbery, *id.* § 924(c)(1)(A)(ii).

After the government rested its case, Johnson, Jenkins, and Jackson moved for a judgment of acquittal. Johnson argued that he was at home during the bank

robbery. Jenkins argued that no one had identified him inside the bank or at the scene of the crash and that the government had not connected him to the cellular telephone used to contact Johnson. Jackson argued that the government failed to prove a prima facie case of bank robbery or that he used a firearm during the crime. The district court denied the motions, and the defendants did not present any evidence on their behalf.

The jury found Johnson, Jenkins, and Jackson guilty of bank robbery, *id.* §§ 2, 2113(a), and the jury also found Jackson guilty of brandishing a firearm during and in relation to the bank robbery, *id.* § 924(c)(1)(A)(ii). Jenkins and Jackson filed a motion for a new trial, which the district court denied "because there was sufficient evidence adduced at trial to support the jury's verdict." Jenkins also moved *pro se* for a new trial on the ground that the prosecutor during rebuttal misstated the evidence and insinuated he had personal knowledge of evidence that Reid "was simply wrong" in concluding Richardson drove the Charger. The district court denied Jenkins's motion.

Both Jenkins and Jackson objected to the sentences recommended in their presentence investigation reports. Jenkins asked the district court to vary downward from his advisory guideline range of 57 to 71 months and impose a sentence between 37 and 46 months of imprisonment. After the government requested a sentence at the high end of Jenkins's guideline range based on his

arrest record and dismissed charges that suggested "he is likely to reoffend,"

Jenkins responded that "[t]here are valid reasons why cases get dismissed" and the

government hadn't provided a "reason of why [his prior charges] were no actioned

or nol-prossed." Jackson acknowledged that he had a prior conviction in Florida

for battery of a law enforcement officer, but he contested the facts provided in the

presentence report. The government responded that Jackson's argument

challenging his classification as a career offender lacked merit because his prior

conviction qualified as a crime of violence under the residual clause of the

Sentencing Guidelines. The district court overruled Jenkins's and Jackson's

objections. The district court sentenced Jenkins to 71 months of imprisonment and

Jackson to consecutive sentences of 240 months for bank robbery and 120 months

for brandishing a firearm.

## II. STANDARDS OF REVIEW

Two standards of review govern this appeal. We review *de novo* whether a

conviction is supported by sufficient evidence, and we construe the evidence in the

light most favorable to the government. *United States v. Jiminez*, 564 F.3d 1280,

1284 (11th Cir. 2009). Motions for a new trial based on the weight of the evidence

are reviewed for abuse of discretion. *United States v. Martinez*, 763 F.2d 1297,

1312 (11th Cir. 1985). Because the denial of a motion for a new trial based on

"prosecutorial misconduct involve[s] mixed questions of law and fact," the motion

is "subject to *de novo* review." *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997). "We review *de novo* whether a defendant's prior conviction qualifies as a 'crime of violence' under the Guidelines." *United States v. Cortes-Salazar*, 682 F.3d 953, 954 (11th Cir. 2012). "We review the reasonableness of a sentence for abuse of discretion . . . ." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

### III. DISCUSSION

Johnson, Jenkins, and Jackson raise five issues for our review. First, the three defendants contest the denial of their motions for a judgment of acquittal based on the insufficiency of the evidence. Second, Jenkins and Jackson argue that the district court evaluated their motions for new trial under an incorrect legal standard. Third, Jenkins argues that he was entitled to a new trial because the prosecutor impermissibly vouched for Carrier's credibility during rebuttal argument. Fourth, Jenkins challenges the procedural and substantive reasonableness of his sentence. Fifth, Jackson contends that he was incorrectly sentenced as a career offender. These arguments fail. We address each in turn.

The district court did not err by denying Johnson's and Jenkins's motions for a judgment of acquittal. "[D]rawing all reasonable factual inferences in favor of the jury's verdict," as we must, *Jiminez*, 564 F.3d at 1284, the government proved that Johnson provided his Dodge Charger as a getaway vehicle and that Jenkins drove

that vehicle to help his cohorts elude law enforcement, *see* 18 U.S.C. §§ 2, 2113(a); *United States v. Perez*, 922 F.2d 782, 785 (11th Cir. 1991). The Charger did not have any damage evidencing that it had been stolen like the Sentra. Although Johnson reported that the Charger had been stolen, the jury reasonably could have rejected Johnson's report as a ruse and inferred that he aided in the bank robbery based on the evidence that he waited until the robbery was completed to report his vehicle as stolen and then lied to the police about when he made that report; he and Jenkins shared more than 200 telephone calls in the two months preceding the robbery; he received telephone calls from Jenkins the morning of and shortly after and in close proximity to the robbery; his and Richardson's fingerprints were on a garbage bag used during the robbery; and he falsely denied associating with Richardson. And the phone calls, Jenkins's flight from the Charger, and his fingerprint on a pair of sunglasses worn by the robbers connected him to the robbery. Jenkins argues that Officer Reid's testimony established that Richardson was the driver, but a reasonable jury could have found that Jenkins drove the Charger. The aerial footage showed a man in a light-colored shirt climb out the driver's door of the wrecked Charger, and testimony at trial established that Jenkins was wearing a gray shirt. In addition, Richardson, who participated in the robbery, had no time while switching vehicles to change seats with the driver in the

9

Charger. Ample evidence supports Johnson's and Jenkins's convictions for aiding and abetting the bank robbery.

The district court also did not err by denying Jackson's motion for a judgment of acquittal. Taken in the light most favorable to the government, the evidence established that Jackson was the gunman during the bank robbery. *See Jiminez*, 564 F.3d at 1284. When apprehended, Jackson was wearing a belt that hung almost to his knees and something blue under his jeans like the robber wielding the gun in the bank surveillance video. The aerial footage showed Jackson, who was wearing a red shirt when captured by officers, depart from the rear passenger door after the Charger stopped, which was consistent with Carrier's testimony that a robber wearing a red shirt left the Sentra and climbed into the rear passenger seat of the Charger. Although the bank employee testified that the gunman wore a black shirt, the jury reasonably could have inferred that Jackson removed his black shirt while fleeing from the bank and then left that shirt, the tire iron, two-toned gloves, and other parts of his disguise in the back seat of the Charger, where the items were discovered by federal agents. Jackson challenges Carrier's credibility, but "credibility determinations are the exclusive province of the jury," *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997). The evidence was sufficient for a jury to convict Jackson of bank robbery and of

10

brandishing a firearm during that crime of violence. *See* 18 U.S.C. §§ 2, 2113(a), 924(c)(1)(A)(ii).

Even if we were to assume that the district court evaluated Jenkins's and Jackson's motions for a new trial using the standard for a motion for an acquittal, any error would be harmless because the evidence did not "preponderate . . . heavily against the verdict." *United States v. Hernandez*, 433 F.3d 1328, 1335 (11th Cir. 2005) (quoting *Martinez*, 763 F.2d at 1312). Jenkins argues that "there was absolutely no evidence placing [him] in the driver's seat of the getaway car," but the aerial footage, testimony about Jenkins's attire after his arrest, and Carrier's testimony proved that Jenkins drove the Charger. Jackson argues that "Carrier's testimony is incredible" because it conflicts with some details he provided during his 911 call, but discrepancies about whether a robber's red shirt is hooded or the exact maneuvers of the Charger are not sufficient reasons to reverse a jury's verdict. Jackson argues there is no forensic evidence connecting him to the crime, but the circumstantial evidence coupled with his flight from the Charger establishes that the verdict reached by the jury was reasonable. "Because the grant of a new trial would have been an abuse of discretion, the error of the district court in employing the wrong standard for a new trial was harmless." *Id.* at 1337.

The district court did not err by denying Jenkins a new trial based on the prosecutor's statements during his rebuttal argument. The statements were a

11

permissible summation of the evidence and response to defense counsel's argument. *See United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). The prosecutor stated that the videotape showed "Jenkins getting out of the front seat of the Charger at the end of the crash," explained that "the other individuals found in that vehicle [were] accounted for from the robbery," stated that Carrier's testimony established that the robbers switched vehicles, and explained that the evidence led to the inevitable conclusion that "Jenkins . . . drove the car." To address Jenkins's defense that "Sergeant Reid testified that . . . Richardson . . . was the driver," the prosecutor argued that Reid "was simply wrong about that" in the light of "the evidence we saw from that video" and "all the other evidence." Jenkins argues that the prosecutor "was indicating a personal belief in [Carrier's] credibility," but the prosecutor simply urged the jury to reach its own "conclusions from the evidence produced at trial," *id.*

Jenkins's sentence is procedurally and substantively reasonable. Jenkins argues that the district court violated his right to due process by imposing a sentence based on unreliable hearsay about his prior arrests, but the district court sentenced Jenkins with due regard for his "past history with the [c]riminal [j]ustice [s]ystem," not the specific wrongdoing of which he had been accused. There is "[n]o limitation . . . on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may

receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Jenkins had two charges pending for carrying a concealed weapon and identity theft; a prior conviction for possession of marijuana; and eight prior arrests, one of which involving chasing an officer with a firearm and two of which involved driving getaway vehicles following robberies of an elderly victim and car parts stores. The district court reasonably determined that a sentence at the high end of Jenkins's advisory guideline range of 57 to 71 months of imprisonment was required to satisfy the statutory purposes of sentencing. *See id.* § 3553(a). And Jenkins's sentence is well below his statutory maximum sentence of 20 years of imprisonment, *id.* § 2113(a), "which is a further indicator the sentence was reasonable." *See United States v. McKinley*, 732 F.3d 1291, 1299 (11th Cir. 2013). Jenkins argues that the district court "failed to consider the mitigating factors that [he] identified" at sentencing, but the district court determined those factors were outweighed by Jenkins's background and history and "the danger [he] created" by assisting armed robbers to evade capture and leading officers on a high-speed chase down a six-lane highway that ended because he struck a bystander's vehicle, s*ee* 18 U.S.C. § 3553(a)(1), (2). The district court did not abuse its discretion by sentencing Jenkins to 71 months of imprisonment.

The district court did not err by sentencing Jackson as a career offender. Jackson acknowledges that we have classified a prior conviction for felony battery

on a law enforcement officer, Fla. Stat. §§ 784.03, 784.07(2)(b), as a crime of violence under the residual clause of the career offender guideline. *Rozier v. United States*, 701 F.3d 681, 682 (11th Cir. 2012) (explaining our previous, unpublished holding "that although Rozier's Florida battery on a law enforcement officer conviction did not qualify as a crime of violence under the elements clause of § 4B1.2(a)(1), it did qualify as a crime of violence under the residual clause"). As we explained in *Rozier*, the decision of the Supreme Court in *Johnson v. United States*, 559 U.S. 133 (2010), "agree[d] with our [earlier, unpublished] conclusion . . . that the Florida crime of battery on a law enforcement officer is not a crime of violence under the *elements clause* of U.S.S.G. § 4B1.2(a)(1) (or its counterpart in 18 U.S.C. § 924(e)(2)(B)(i))." *Rozier*, 701 F.3d at 685 (emphasis added). After supplemental briefing, Jackson concedes that his argument that the residual clause of the career offender guideline is unconstitutionally vague based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), is foreclosed by *United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015). As we explained in *Matchett*, "*Johnson* is limited to criminal statutes that define elements of a crime or fix punishments. . . . [T]he advisory guidelines do neither." *Id.* at 1194. Jackson disagrees with our precedents, but "[u]nder the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court *en banc* or by the Supreme

14

Court," *United States v. Martinez*, 606 F.3d 1303, 1305 (11th Cir. 2010) (quoting

*United States v. Vega–Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008)).

## IV. CONCLUSION

We **AFFIRM** the convictions and sentences of Johnson, Jenkins, and

Jackson.